UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KIRSTEN M.[1], | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:20-cv-02544-RLY-DML ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) ) ) ) |
| Defendant. | ) |

**Report and Recommendation on Complaint for Judicial Review**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that Kirsten is not disabled.

## Introduction

Kirsten applied in May of 2017 for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. After her application was denied initially and on reconsideration, a hearing was held on October 4, 2019, before administrative law judge Therese Tobin. The ALJ issued her decision on October 22, 2019, that

---

[1]   To protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security review opinions. The Plaintiff will therefore be referred to by her first name.

[2]   Kilolo Kijakazi is substituted as the defendant under Fed. R. Civ. P. 25(d).

Kirsten was not disabled. The Appeals Council denied review on July 30, 2020, rendering the ALJ's decision for the Commissioner final. Kirsten timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Kirsten contends that the Commissioner's decision must be reversed because (1) substantial evidence does not support the ALJ's conclusion that there are other jobs that she can perform in the national economy, (2) the ALJ's evaluation of Nurse Practitioner Sheets's opinion is not supported by substantial evidence, and (3) the ALJ did not address evidence that Kirsten's severe impairments affect her ability to use her hands.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Kirsten's assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Kirsten is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these

statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has predetermined are disabling, so that if a claimant meets all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity ("RFC") is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart*, 362 F.3d 1026, 1029 (7th Cir. 2001).

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Before addressing Kirsten's specific assertions of error, the court provides background information about her past work activity and her medical impairments and then summarizes the ALJ's sequential findings.

## Analysis

I. **Background**

Kirsten was born in 1973 and was 46 years old at the alleged onset of her disability in 2016. (R. 17). Kirsten has work experience as a psychiatric attendant, call center worker, cell phone retail sales attendant, customer service representative, and group home worker. (R. 17).

On June 1, 2016, Kirsten saw her primary care provider—Nurse Practitioner Sheets—for hypertension, depression, headaches, and fatigue. (R. 623). Kirsten returned to Sheets on July 20, 2016, for feelings of sickness and fatigue. (R. 617). A few months later, on December 22, 2016, Kirsten complained to Sheets of wheezing, shortness of breath, and anxiety. (R. 606). During her visit with Sheets on February 22, 2017, Kirsten complained of dizziness and fatigue. (R. 600). Kirsten continued to feel tired when she saw Sheets on April 25, 2017. (R. 594).

On May 24, 2017, Kirsten saw rheumatologist Dr. Racovan—whom she had started seeing in 2015—for, among other complaints, right thumb pain. (R. 21, 721). Upon examination, Dr. Racovan found no swelling, tenderness, or deformities in her hands and determined that Kirsten could "make full fists bilaterally." (R. 721). An x-ray of Kirsten's hands was also normal. (R. 723).

One year later, in May of 2018, Kirsten was seen by a clinical neuropsychologist who made the following determinations about Kirsten's bilateral hand functioning: Kirsten's "[f]ine motor speed and dexterity (GPT) were mild to moderately impaired with her dominant, right hand … and severely impaired with her [left hand]."[3]  (R. 1372-73).

Sheets saw Kirsten again on June 13, 2018.  (R. 1253).  Kirsten complained of muscle aches and weakness, joint pain, back pain, and swelling in her extremities. (R. 1258).  Kirsten also told Sheets that she was having morning stiffness and was sometimes stiff for the whole day, and she also explained that she was having pain "all the time," which made her depression worse.  (R. 1257-58).

Kirsten had a whole-body x-ray on June 25, 2018.  (R. 1055).  The cervical spine did not show any significant abnormalities, and the thoracic and lumbar spine were unremarkable.  *Id.*  The hip was within its normal limits, and the shoulder, hands, and wrists were unremarkable.  *Id.*  No abnormalities were detected in the knees.  *Id.*  The x-ray did, however, show an abnormality near the second metatarsophalangeal joint on the right that was likely arthritic or posttraumatic. *Id.*

Kirsten returned to Sheets on June 17, 2018, for right foot pain, muscle aches, and joint pain.  (R. 1252).  Sheets's exam of Kirsten found that her right foot was "diffusely tender."  (R. 1252).  On September 17, 2018, Kirsten complained of ankle pain and stated that she was wearing a brace for a posterior tibial tendon

---

[3] The record is missing page three of neuropsychological report.

strain, which was affecting her ability to exercise. (R. 1240). Sheets saw Kirsten again on October 4, 2018, and November 8, 2018. (R. 1230). During each of these visits, Kirsten continued to report that she was having trouble exercising because of the tendon in her right ankle. (R. 1229, 1235). On December 10, 2018, Kirsten reported that her ankle had started to feel better after being fitted for a special brace. (R. 1224). She also reported that she had received some hip injections. *Id.* On March 11, 2019, Kirsten told Sheets that she was still experiencing muscle aches, joint pain, and back pain, as well as frequent and severe headaches. (R. 1218).

In addition to these visits, Kirsten saw a variety of other medical providers from February 2015 to August 2019. Her complaints included foot pain, back pain, dizziness, sweating, nausea, heart pounding, fatigue, migraines, knee pain, ankle pain, heel and Achilles tenderness, malaise, anxiety, depression, sleep disturbances, asthma-related symptoms, abdominal pain, and right hip pain.

## II. **The ALJ's Sequential Findings**

At step one, the ALJ found that Kirsten had not engaged in substantial gainful activity since her alleged onset date of October 14, 2016. (R. 17). At step two, she determined that Kirsten's severe impairments were osteoarthritis of the knee, obesity, seronegative arthritis secondary to inflammatory bowel disease (IBS), asthma, lumbar disorder, migraine, and depression. (R. 18). The ALJ decided at step three that no listings were met or medically equaled. *Id.*

7

For the RFC, the ALJ decided that Kirsten was capable of sedentary work. (R. 20). The ALJ precluded a work environment that exposes her to unprotected heights or dangerous machinery, and she decided that Kirsten cannot climb ladders, scaffolds, or ropes but can occasionally climb stairs and ramps. *Id.* The ALJ also decided that Kirsten can occasionally stoop, kneel, crouch, crawl, and balance. *Id.* Kirsten can never work in a poorly ventilated environment but can otherwise tolerate occasional exposure to atmospheric conditions. *Id.* The ALJ found that Kirsten requires a sit/stand option that allows her to change position every 30 minutes—if needed and "without disturbing the workplace." *Id.* She further limited Kirsten to simple, routine tasks, and she stated that Kirsten can have only occasional contact with co-workers, supervisors, and the public. *Id.*

The ALJ found at step four that Kirsten could not perform her past relevant work as a psychiatric attendant or group home worker, which Kirsten performed at the heavy to very heavy levels of exertion. (R. 30). The ALJ also found that Kirsten could not perform her past relevant work as a call center worker, cell phone retail sales attendant, or customer service representative, which Kirsten performed at the sedentary to light levels of exertion. *Id.* At step five, she determined that, based on the testimony of a vocational expert, Kirsten's vocational factors, and her RFC, Kirsten could perform the following jobs that existed in significant numbers in the national economy: bench hand, final assembler, and clerical sorter. (R. 31). Accordingly, the ALJ determined that Kirsten was not disabled at any time between

her alleged onset date of October 14, 2016, and October 22, 2019, the date of the ALJ's decision.

### III. Kirsten's Assertions of Error

In seeking judicial review, Kirsten raises three errors. Two relate to the ALJ's residual functional capacity determination and the third relates to the reliability of the vocational expert's opinion about available jobs. Kirsten contends that the ALJ's RFC is erroneous for two reasons: (1) the ALJ's evaluation of an opinion by Nurse Practitioner Sheets is not supported by substantial evidence and (2) the ALJ failed to address evidence that Kirsten suffers from a severe impairment affecting her ability to use her hands. With respect to the VE's opinion, Kirsten contends that it is not reliable because the ALJ's hypothetical questions to the VE (a) included a phrase that Kirsten contends is not a vocational term and (b) included restrictions that would require special accommodations by an employer.

A reviewing court must determine if it can follow the ALJ's reasoning and if substantial evidence supports her decision. *Dixon*, 270 F.3d at 1176. It must afford an ALJ's determination special deference, and it will only reverse if the ALJ's determination is patently wrong. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015). If the ALJ failed to build a bridge between the evidence and her conclusion, then this court must reverse. *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006). The court addresses each of Kirsten's contentions.

> **A. The court rejects Kirsten's contentions that the VE's opinion about available jobs is unreliable.**

When, at step five, an ALJ relies on the testimony of a VE regarding jobs that fit functional abilities and provide a certain work environment, the claimant must actually have that functional capacity and the ability to function in the described environment. *E.g., Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011) ("We have stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity.") There must be some assurance that the VE's testimony regarding available jobs considered all functional limitations stemming from impairments that the ALJ has found and that are otherwise supported by the evidence. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Otherwise, one cannot be assured that the VE's opinion includes only jobs that the claimant can perform. *Id.*

The ALJ determined that Kirsten could perform sedentary work with a sit/stand option that permits her to change position every thirty minutes, if needed and "without disturbing the workplace." (R. 30). Kirsten argues that the phrase "without disturbing the workplace" is not a vocationally relevant limitation and does not speak to Kirsten's "ability to stay on task during the sit/stand option." She relies on *O'Connor-Spinner v. Astrue*, arguing that since the ALJ's "vague limitation" failed to address off-task behavior, the ALJ committed harmful error.

Kirsten does not identify any evidence to support her contention that she could not stay on task during the sit/stand option. Moreover, in *O'Connor-Spinner*, the court explained that Seventh Circuit precedent does not insist on a per se requirement that specific terminology be used in all hypotheticals posed to the VE.

10

*O'Connor-Spinner v. Astrue*, 627 F.3d 614, 616 (7th Cir. 2010). Therefore, Kirsten's contention that the ALJ's use of the phrase "without disturbing the workplace" was not a vocationally relevant limitation is without merit because *O'Connor-Spinner* expressly rejects a per se terminology requirement. Rather, courts should focus on whether the ALJ orients the VE to the totality of the claimant's limitations. *Id.* at 619. Here, the record demonstrates that the VE was properly oriented by the ALJ's hypotheticals. There is no evidence that the VE did not understand what the ALJ meant by this phrase, and there is nothing in the hearing transcript that indicates that the VE did not understand the totality of Kirsten's limitations with sitting and standing. Nor does Kirsten make these arguments. Instead, Kirsten suggests that the ALJ's use of the phrase "without disturbing the workplace" was so ambiguous that it constitutes harmful error. Kirsten's counsel, however, never asked the VE any questions during the hearing about the VE's understanding of this phrase in giving his opinion about available work. And counsel said nothing to suggest that the phrase has no vocational relevance. Consequently, Kirsten has forfeited the contention made now that the use of this phrasing in the RFC and concomitant use within the hypothetical to the VE is legally erroneous and makes unreliable the jobs information supplied by the VE. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (explaining that the claimant forfeited her arguments about the VE's testimony "by failing to object to the testimony during the administrative hearing").

Kirsten also argues that the VE improperly considered accommodations at the hearing. According to Kirsten, the VE "testified that in order to perform the

11

jobs given with a sit/stand option, an employee would need an accommodation like a stool or an adjustable height desk." This is not an accurate interpretation of the VE's testimony. The VE said that the jobs at issue are performed at a chest-high bench and usually while standing but can be performed while sitting or standing. (R. 59). The VE also stated that workers "can use [an] assistive device for changing the level of the computer " if they are required to use a "full blown computer," but jobs also allow workers to use a tablet or small laptop. (R. 60). The VE never said that a sit/stand device or stool is required to perform these jobs and his testimony indicates that a sit/stand device is only useful when the worker is utilizing a full computer, which is not always the case. Most importantly, the VE testified that sit/stand assistive devices are "pretty much standard now" and are "not even considered an accommodation anymore." *Id.* Although Kirsten claims that the VE failed to support this assertion with any evidence, she has not demonstrated that the ALJ could not rely on the VE's opinion that sit/stand devices are not an accommodation anymore. The VE explained that the sources of all his opinions were industry publications, education, and field experience. Therefore, the VE's testimony in response to the ALJ's hypotheticals provided substantial evidence that other work existed that Kirsten could perform.

> **B. The court rejects Kirsten's argument that the ALJ's evaluation of Nurse Practitioner Sheets is not supported by substantial evidence.**

In August of 2019, Sheets opined through a medical assessment questionnaire that Kirsten would need to take hourly work breaks and would be

absent more than four days every month. (R. 1378). Explaining the basis of her opinion, Sheets stated that "[Kirsten] has decreased mobility due to chronic pain and inflammation" and "has significant depression affecting motivation and focus." *Id.* The ALJ determined that Sheets's opinion was "overly sympathetic" to Kirsten, "insufficiently specific," and "otherwise not persuasive." (R. 30). Kirsten claims that this determination was not supported by substantial evidence.

SSA regulations state that the agency "will not defer or give any specific evidentiary weight" to a claimant's medical sources. 20 C.F.R. § 404.1520c(a). When evaluating the persuasiveness of a medical opinion, the most important factors that an ALJ considers are supportability and consistency. *Id.* The ALJ must articulate how she considered the supportability and consistency factors. 20 C.F.R. § 404.1520c(b)(2). An ALJ is not required, however, to articulate how she considered all the factors for all medical opinions in the case record. 20 C.F.R. § 404.1520c(b)(1).

The ALJ properly evaluated Sheets's opinion in accordance with the regulations. The ALJ explained that nothing in Sheets's documentation or other documentation in the record established that Kirsten could not perform a limited range of sedentary work. (R. 30). Additionally, the ALJ explained that Sheets's opinion did not specifically address Kirsten's tolerances for different work tasks and environments, and it failed to articulate any exertional and/or postural restrictions. *Id.* Kirsten argues that "there is no evidence that Ms. Sheets's opinion was overly sympathetic, since the record supports Ms. Sheets's statement that [Kirsten] had

13

decreased mobility and depression." This argument misunderstands the ALJ's analysis. The ALJ did not find Sheets's opinion unpersuasive because her description of Kirsten's impairments was unsupported by the record. Rather, the ALJ found Sheets's conclusion about how these limitations affect Kirsten in the workplace, considering the record evidence, was unpersuasive. It is not evident to the court—and Kirsten fails to explain—why these limitations indicate that Kirsten cannot perform a modest range of sedentary work.

     Kirsten also claims that Sheets did not address any exertional limitations because the medical assessment form did not ask for them. The form did, however, ask Sheets to "describe limitations the patient would experience when performing work-related activities and comment on the basis of [her] opinion." (R. 1378). In response, Sheets merely stated that Kirsten had decreased mobility, chronic pain, inflammation, and depression. *Id.* Sheets never articulated how these limitations affect Kirsten's ability to work, and she did not explain how these limitations formed the basis of her opinion that Kirsten would need hourly breaks and would miss more than four days per month. *Id.* Kirsten also asserts that the ALJ failed to expressly address one neuropsychological exam—in a 1,443-page record—during her analysis of Sheets's opinion, but the regulations provide that an ALJ does not have to articulate how she addressed all the medical opinions in the record. 20 C.F.R. § 404.1520c(b)(1). The ALJ sufficiently articulated her reasons for finding Sheets's opinion unpersuasive and therefore did not err.

### C. The court rejects Kirsten's contention that the ALJ did not address evidence showing that Kirsten's impairments affect her ability to use her hands.

Kirsten further argues that the ALJ failed to address evidence that shows she has impairments that affect the use of her hands. She asserts that her fine motor speed and dexterity are mildly to moderately impaired in her right hand and severely impaired in her left. Because unskilled sedentary work typically requires full use of hands, Kirsten contends that the ALJ's failure to address her hand impairments was harmful error.

Kirsten has argued in her reply brief that the ALJ erred at step two. The step two analysis asks whether the claimant has any severe, medically determinable impairment. If the claimant has none, then she is *not* entitled to benefits and the analysis of credibility ends. But if the claimant has at least one severe, medically determinable impairment, then the sequential analysis continues to determine whether there is a presumptive disability at step three and, if not, whether the claimant can work despite the effects on work capacity of *all* severe and non-severe impairments. Thus, if an ALJ determines there exists at least one severe impairment, there technically is no legal error at step two. *Curvin v. Colvin,* 778 F.3d 645, 649 (7th Cir. 2015) (A favorable disability ruling can be made only at step three or at step five, and there can be no legal error at step two where the ALJ makes "as favorable a determination as can be made" at that step by finding that the claimant has at least one severe impairment based on the objective medical evidence.) But an ALJ's failure to address impairments at step two can be a

15

harbinger of errors beyond step two because the ALJ may then fail to address whether the impairments she found were not severe or impairments she may have not addressed at all cause limitations in work capacity for purposes of formulating an RFC and then deciding whether the claimant can work. *See id.* at 649-50 (Any failure to address all impairments at step two "does not matter" where the ALJ elsewhere in her decision properly considers all severe and non-severe impairments, the objective medical evidence, the claimant's symptoms, and her credibility in determining her capacity to work.)

The court does not agree with Kirsten's claim that the ALJ did not address the limitations with her hands. While the ALJ did not find that Kirsten's reduced fine motor speed and dexterity were severe impairments, she did find that Kirsten suffered from seven severe impairments. Therefore, the ALJ did not err at step two because there can be no error at this step when an ALJ identifies at least one severe impairment. *See Curvin*, 778 F.3d at 649.

The ALJ also did not fail to address Kirsten's hand limitations when formulating the RFC. She stated that x-rays of the right hand indicated "no acute osseous abnormality." (R. 24-25). She also included a finding from a state agency physician that determined Kirsten had no significant manipulative limitations and a finding from Dr. Racovan that Kirsten could "make fists with both hands." (R. 25, 26). The ALJ noted the finding from her neuropsychological exam that "[Kirsten] demonstrated some motor impairment." (R. 27). Thus, the ALJ clearly considered Kirsten's motor impairments in her hands. But she also considered other record

16

evidence that suggested Kirsten's hands were normal, and therefore found that she could perform sedentary work. It is not this court's role to upset an ALJ's decision because the claimant thinks it came out the wrong way; it can only reverse when the decision is not supported by substantial evidence. Here, there is substantial evidence to support the ALJ's conclusion because record evidence indicates that Kirsten has no limitations with her hands. And contrary to what Kirsten claims, the ALJ did not completely disregard Kirsten's neuropsychological exam, but rather, expressly considered it in reaching her conclusion. Therefore, the ALJ did not err.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Kirsten was not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within 14 days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

2/3/2022

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system